I am informed all parties are here, so I will turn to the first case on the calendar, which is United States v. Vazano. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Lorraine Galli-Rufo on behalf of the appellant, Anthony Vazano. Your Honors, my argument is that the district court below erred when it sua sponte imposed a 10% garnishment on the appellant Vazano's monthly income, and that was to satisfy a $59,000 and change forfeiture amount by way of a money judgment. Are you arguing that 10% is unreasonable, or what? No, Your Honors. You agreed to the amount. We did agree to the amount. However, Your Honor, there's a couple of issues with that. One of them is in light of Honeycutt. I believe that money judgment— This has nothing to do with Honeycutt. Well, my argument, Your Honor, is that Honeycutt prohibited judges from imposing judicially created remedies and directed the courts to look back to the plain meaning of the statute, the forfeiture statutes, which require, even though the court in Honeycutt did say it is an impersonum, you know, it has changed from in rem to impersonum proceeding, that they wanted to focus back on the in rem issues there and look at the property. The statutes in forfeiture talk about— That's when you have to substitute property. That's correct. But this was all money, and he agreed to the amount, and he agreed it was the fruits of the crime. Didn't he agree to all of that? He did agree to that, Your Honor. What are you asking for? What I'm asking for, there's a couple of things. First of all, I'm asking that to put a 10% monthly income, to pay 10% of someone's monthly income that is in the JOC, that's the first thing that I'm arguing, Your Honor. I think that— Do you say it's unreasonable? I think it's unpermissible. I think to put a money judgment in a— Well, it's up until the time of a judgment, so what is the problem? Because we actually see these kind of percentage of income directions for payment quite frequently. What do you think is the problem with it? Well, Your Honor, I think the problem with that is that it's a forfeiture. It's not restitution, and it's not a fine. So it's 10% of somebody's monthly income for forfeiture, which exposes them, if they don't pay it on a monthly basis, to violations of their supervisory lease and additional time in jail. But he's not in a position to forfeit the money all at once. Is that right? Because he does not have it right now? He does not have the money. Well, he—this has never been determined below is the problem. He could get rid of it just by paying the money. Well, that was never determined whether he had the money or not. First of all, there was a—the government actually sidestepped. Your client could show up tomorrow with a check, and that would be a useful question about whether or not he has to pay 10%. It's because of the assumption, based on the PSR, that he's not in a position to pay it right now, that the court allowed him to pay it in the alternative in 10% installments. Isn't that correct? Well, that might have been the judge below's determination, but there was never a—the forfeiture property was never litigated. So while they did agree to a money judgment in that case, the consent order that was attached to the plea agreement also said that the government would do their end of the bargain, which was to determine the substitute assets and then impose the money judgment. There's no question of substitute asset here. We're dealing with all cash, cash from the offense of conviction and cash that he agreed to. He agreed to the exact amount. As Judge Rossi suggests, the alternative is to pay it all at once. Your Honor, this plea agreement was entered pre-Honeycutt. And I think that it— Honeycutt doesn't really have anything to do with this case, does it? I think it does, Your Honor. Explain to me how. Yes. So Honeycutt dealt with joint and several liability, which— We don't have that here, right? Exactly. But the court did say, in much of its decision, that joint and several liability was a judicially created remedy for forfeiture. But that was in a circumstance where the defendant was not the one who had obtained the proceeds of the crime, and his liability under joint and several was to pay money as forfeiture that was properly imposed on other people because they were the ones who had gotten the benefit. He had not gotten the benefit. Your client is not in that position at all. Well, Your Honor, I disagree with that. I believe that a money judgment— First of all, the forfeiture statute talks about property, and that's what a lot of the Honeycutt decision was about. Forfeiture is disgorging property from someone. The only alternative, if you don't have property, is to go to the substitute asset provision. There's no provision in the forfeiture that says that money judgments are permissible. There's nothing in there that says if you— Your client consented to a money judgment. Yes, he did, Your Honor. Let me ask you something else. Not only did your client consent to a money judgment, but your client used the obligation of the forfeiture as a bargaining chip to escape liability for a fine. So having used it for his benefit, is it appropriate for you now to come in and say, well, we're going to take back the forfeiture, even though we've gotten the benefit of it, by negotiating to get us out of a fine? Your Honor, I do agree that during the sentencing, I did argue that my client shouldn't have to pay additional money, but at that time, he was also paying a state fine as well. I never said it was because of the forfeiture amount he's going to pay. You cited his having agreed to a forfeiture as a mitigating factor for why he shouldn't have to pay a fine. Your Honor, I'm sorry. I reread the transcript, and what I recall saying, and I'm sorry if I stand corrected, was that he did have outstanding obligations. One of them was a state fine that was still for about $1,000, but I don't think I particularly pointed to restitution other than outstanding obligations that he had. And I'm not doubting that there might have been some restitution, some forfeiture that could have been determined had the government complied with the forfeiture statutes. He agreed to the amount. Are you contesting the amount? I'm contesting... He agreed to a money judgment in this amount. That's correct, Your Honor. I'm contesting... I'm arguing that money judgments should not be permitted for forfeiture. I'm arguing that in light of Honeycutt, anything that is not permitted in the forfeiture statute should be limited. As Judge LaValle said, why aren't we correct in reading Honeycutt as not foreclosing money judgments regarding forfeiture, only saying that you cannot obtain a money judgment on a theory of joint and separate liability? That's the Honeycutt holding. Your Honor, I'm reading Honeycutt a little broader than that, and what I'm reading the justices in Honeycutt stating in that provision is that we're focused on the property. And in property, when you look at the property, even the plain meaning, they talk about the plain words that are used in the forfeiture statute. And when we look at that, we see property. And property, there's a substitute property provision. I don't agree with that reading of Honeycutt. Do you have any other argument? Yes, Your Honor. I do also believe that the government did not comply with litigating the substitute assets. Even though we agreed to the amount, we also agreed... What kind of substitute asset? This was a cash offense and a cash forfeiture, and he agreed to the amount. I don't know what is left really to argue. Thank you, Your Honor. He did agree to the amount, but he also agreed within the context of the consent order that was attached to the plea agreement that the government would comply with Rule 32.2 as well as 853P in determining those substitute assets to fit into that financial obligation, Your Honor, that he agreed to. Thank you. The government's brief says on the bottom of page 17, Vazano specifically relied on the money judgment in successfully arguing that a fine should not be imposed. Are you saying you're saying they're wrong? Because before you were saying, my memory isn't that I expressly referred to the forfeiture. And the second part of the question, it's correct, is it not, that Honeycutt had been decided before the sentence in this case? Yes, Your Honor. If you had something to say in reliance on Honeycutt, the sentence was the time to say it. Otherwise, you're subject to plain error. Yes, Your Honor, and I did not say it at sentencing. I did file a Rule 35 motion following the sentencing to ask Judge Sullivan to correct that issue. Your Honor, I have the transcript here. Your reference was to other outstanding obligations. Now, the only obligation that the district court was focused on was the forfeiture that was part of the agreement. So for you to say that that alluded to other state obligations when you didn't reference them seems to me to be a bit of an afterthought here. The other obligation that the judge knew your client was consenting to was this forfeiture. So I'm hard pressed to see how you didn't rely on it. You're telling a judge who could impose a forfeiture, could impose a fine, don't do the second because we've agreed to the first. Isn't that right? Isn't that what was being conveyed to the district judge? As well as, Your Honor, what I believe was in the transcript was that there was an outstanding amount he had to pay in the state for $1,200. I think I specifically put that on the record. It's quite different from the $59,000 that you're arguing here. And, you know, if you relied on this in any way, we don't simply have a forfeiture of any Honeycutt argument or any Honeycutt akin argument. We have waiver. We have true waiver. I mean, you're not disputing that the implication you were giving the district judge is, look, the man's going to pay $59,000 or he's going to forfeit $59,000, don't impose any further fine. The waiver, Your Honor, at a minimum, did not go to 10% of his monthly income. That every month he doesn't pay 10% of that, he is subject to a violation of a supervised release. Thank you. You have one minute for rebuttal. We'll hear from the government. May it please the Court, my name is Amanda Kramer and I represent the United States in this appeal. I also represented the United States in the proceedings below. The entry of the money judgment in this case should be affirmed because the defendant expressly waived his right to appeal the imposition of the money judgment in two independent ways. First, he expressly waived in the plea agreement his right to appeal a forfeiture order in exactly the amount of the money judgment that Judge Sullivan imposed. Second, he consented to the entry of the money judgment at both his plea hearing and his sentencing, inviting the purported error that he now seeks to challenge. It seems to me he's complaining about the 10% monthly, but his alternative is to pay it all right now, right? That is true, Your Honor, and there was an ample factual basis for Judge Sullivan to conclude that he did not have the money to pay it all at the time based on the defense counsel's statements at the sentencing and what was otherwise in the record. But as we noted in our brief, we're consenting to a limited remand for the purpose of Judge Sullivan making findings under Section 853P specifically, which addresses the only arguable challenge, the only colorable challenge that the appellant has raised. What would be the scope of that? What effect would that remand potentially have on the issue that we've been arguing? Your Honor, the effect would likely be for the defendant to have the opportunity to argue more explicitly that the proceeds of the gambling scheme had not been transferred to a third party or otherwise dissipated or diminished in value and for the district court to expressly find that one of the provisions under 853P had been satisfied. That is implicit in the sentencing record. Why did you agree to a remand? Because of the fact that there was no specific finding made at the sentencing under Section 853P as is normally the case, and attendant with that, no identification of which factor or factors under 853P the court was relying on, and that there was no advance notice. I'm not sure I understand what would happen. It would go down below and you would defend the 10% order saying there are no other substitute assets to go after, and what the defendant could say, oh yes, there are other substitute assets to go after this piece of property or that piece of property or whatever, not my income. Is that what you really envision here? Based on the record that was before the district court at sentencing, I do not anticipate that there will be a successful challenge by the defendant on the basis that he has other assets to pay or that . . . To this amount. Yes, absolutely, Your Honor, and he . . . The question is whether it would come out of his income or whether there are other assets. That's what I'm trying to figure out because otherwise, I would think you'd be here arguing that if there weren't the express findings, it was harmless error. Yes, I think, Your Honor, because 853P is the typical procedure and mechanism by which substitute assets are obtained, the fact that that wasn't explicit leaves perhaps a technical gap in the record but a gap that is easily remedied by a limited remand. Now, you do say in your brief that the record supports the finding that the proceeds Vazzano received from the gambling offense have substantially diminished in value. How? Because he spent the money or what? Yes, Your Honor. So in connection with his sentencing, he reported only $159 in unencumbered assets and was unable to pay a proposed $2,000 fine. So is it your position that a defendant who can come in, who's received substantial gambling assets, who says, well, I spent it all on whatever items he spent it on and they're no longer recoverable, that he has a colorable claim that he shouldn't be required to make any forfeiture? Not at all. If that is the impression that I have conveyed, then let me correct that now. That is not the case. That is not what any of the forfeiture jurisprudence has held. That is not the law. 853P is the sort of procedural mechanism by which the additional assets, the substitute assets, are authorized to be collected. Because that technically wasn't discussed by the district court, that is the basis for the limited remand. Substantively, it will not change anything. The defendant said to probation and represented at the district court that he had no ability to even pay a $2,000 fine. It would not change anything. Why should we engage in this exercise in futility? To give the defendant the chance to make whatever arguments they're contending they were unable to make below. There's something that puzzles me. Going back to Judge Radji's question, the proposition of an asset diminished in value does not on its face seem to represent money that has been spent on beer. It seems to me that would be appropriate if you had, for example, co-conspirators in an illegal venture that made profits and they divided up the profits in a certain way where this defendant got a valuable painting or a house or something like that as his part of the proceeds and that object was worth $1 million at the time that they divided it up but subsequently it's gone way down so now it's worth only half of what it was originally worth. That's an asset that's diminished in value. Money that's been gotten and spent ordinarily is not considered an asset that has diminished in value. Absolutely correct, Your Honor. What does the statute that you're referring to have to do with the proposition we're talking about which is money that was received as proceeds of unlawful activity that has just been spent on beer? 853P provides that if the property to be forfeited not only has diminished in value, there are other ways that it triggers the substitute assets. One which may be more apt in this case is that it has been transferred or deposited with a third party or has been placed beyond the jurisdiction of the court. 853P does cover in a different . . . Spending it is placing it beyond the jurisdiction of the court. Yes, or transferring it to a third party. When a defendant pays a forfeiture, when a defendant who's gotten a million dollars in profits and pays that as a forfeiture, that always involves substitute assets. It's not the same money that gets paid. It's new and different money. No one traces the money to see whether the money he pays is the money, the dollar bills that the defendant got. True, Your Honor. I think that the difference here perhaps and why the district court making a finding under 853P is something that perhaps makes sense is that it is not just that he owes this in the future, but that a specific property in the form of his future wages was ordered to be paid, which makes it more like a true substitute asset that would flow from an order entered by the district court under Section 853P. If you can trace for us, what are the different options, the different possibilities of what will happen in this case after the remand that you've consented to? How would this case play out under different hypotheses of how the district court decides? Based on other procedures and in similar cases where there is going to be a substitute asset order, there would be notice. The judge parties would not have to brief it, but if the defendant had some argument to be made, could. And the judge would then enter an order under Section 853P requiring the specific property of 10% of the defendant's future wages to be paid. I see that my time has expired, Your Honor. Answer the question. So the judge would then issue an order. Be specific as to what will happen in this case depending on the various hypotheses of what the judge might decide. There would be notice. The judge would hear from the parties, either in writing or orally, and then the product of that litigation would result in an order that the judge issues. What are the different possibilities of orders that the judge would make? The order would explicitly say that under Section 853P, the defendant must pay 10% of his wages towards forfeiture, which that order then allows the government, if it's not paid, to take other action to seek that money. So it's a little bit cleaner to understand in the context of real property, for example, but an order under 853P saying that the house that the defendant has recently purchased is a substitute asset and is to be forfeited allows the government to then take that order and get a lien on that property. It's slightly different here, but I don't know what the procedures are for getting a garnishment order for a percentage of wages, but it would be that order that would allow the government to put into greater effect the judge's intent that the defendant's wages be garnished. It sounds like you're consenting to this remand in order to put the government in a better position to move against the defendant's property. Um... I think that would be one effect, potentially. To benefit you? To benefit the government? That may be one effect, Your Honor. I wouldn't say that that is the reason for the consent to remand. Thank you, counsel. Thank you. Counsel, you have a minute for a rebuttal. Yes, Your Honor, thank you. What do you expect to do in a remand? Well, Your Honor, it puts me in a quandary as to what's... The whole issue with the government agreeing to a remand in this case is that it didn't satisfy 853P, which is the only provision that you can get forfeiture without having untainted property. It's the way... I don't agree with you that this order is impermissible outright. If we don't agree with that argument, do you agree to a remand so that you can get whatever rights you have under these statutes and rules? Absolutely, because the government does have the burden to establish that property, like they are conceding to, untainted property, which future income clearly is. It can't be... It's not traced to any crime, right? It's untainted property. We only have one provision in that forfeiture statute that permits substitute assets, and that's if you comply with Section P, which the government has said... Didn't your client agree that this property are the fruits of the crime? My client agreed to forfeiture with a consent of preliminary forfeiture attached, which said that the government was going to utilize 32.2 and 853P and determine whether there were substitute assets that... Answer my question. I'm sorry. Didn't your client agree that this $59,540 were the fruits of the crime? Didn't he agree... He agreed that he would forfeit to the government $59,000. He agreed to a judgment, a money judgment. Yes, he did, Your Honour. Did he do that because this money was the fruits of the crime? I mean, why else would he do it? I thought the point was he agreed to forfeit $59,000, and I thought it was representing proceeds traceable to the offense. Is that right? Yes, Your Honour, and a money judgment. So now the point of how much he has to forfeit doesn't have to be litigated because you've agreed that there's that much that's fruits of the crime. How it's paid is entirely up to your client in the sense that we started with, which is he can write a check if he wants to without the government caring where it comes from. But to the extent he doesn't have the assets to satisfy this judgment, the court's letting him do it at 10% of his paycheck. But it seems to me a benefit to your client, not a harm. I disagree respectfully, Your Honours. Okay, well, thank you. Thank you, Your Honour. Well-reserved decision.